Gary A. Gotto, SBN 007401
Gary D. Greenwald, SBN 025305
KELLER ROHRBACK, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012-2600
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggreenwald@krplc.com
ggotto@krplc.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID LUCAS BURGE, ALASTAIR DICK, LYNDA FORGETTE, PAMELA KRAUSE, FRED ANTHONY REYES, and DAVID PORTER WILSON, on behalf of themselves, and a class of persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FREELIFE INTERNATIONAL, INC., a Connecticut corporation,<br><br>Defendant. | NO. _____<br><br>**COMPLAINT**<br><br>**(Tort, Non-Motor Vehicle)** |

Plaintiffs David Lucas Burge, Alastair Dick, Lynda Forgette, Pamela Krause, Fred Anthony Reyes, and David Porter Wilson ("Plaintiffs"), individually and on behalf of others similarly situated, bring this action against Defendant FreeLife International, Inc. ("FreeLife"), to remedy its acts of misrepresentation and deception in the marketing and sale of certain products.

. . .

. . .

. . .

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088 FAX (602) 248-2822

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088 FAX (602) 248-2822

**VENUE AND JURISDICTION**

1.      Venue is proper in this Court pursuant to Arizona Revised Statutes § 12-401(7), in that this action arises from the sale and/or advertisement of merchandise by a corporation with its principal place of business located in Maricopa County, Arizona. Such sales and/or advertisements were made to persons such as Plaintiffs residing in the United States, Canada, and Australia.

2.      This Court has subject matter jurisdiction over this Class and the representative action pursuant to Rule 23 of the Arizona Rules of Court.

**PARTIES AND FREELIFE AGENTS**

3.      Individual and representative Plaintiff David Lucas Burge is a resident of San Francisco, California, and Kauai, Hawaii.

4.      Individual and representative Plaintiff Alastair Dick is a resident of Windsor Gardens, South Australia, Australia.

5.      Individual and representative Plaintiff Lynda Forgette is a resident of Oshawa, Ontario, Canada.

6.      Individual and representative Plaintiff Pamela Krause is a resident of Almond, Wisconsin.

7.      Individual and representative Plaintiff Fred Anthony Reyes is a resident of Kauai, Hawaii.

8.      Individual and representative Plaintiff David Porter Wilson is a resident of Toronto, Canada.

9.      Each of the Plaintiffs purchased and consumed products sold by FreeLife, including Himalayan Goji Juice, and/or GoChi Juice, and/or TAIslim.

10.     Defendant FreeLife is a Connecticut corporation with its principal place of business located in Maricopa County, Arizona, and conducting operations as a direct sales company marketing and distributing alleged health products through

marketing executives located throughout the world.

11.     Peter James Reilly ("Reilly") has been employed by FreeLife and served as Chief Operating Officer and Chief Legal Officer of FreeLife since February 2006, responsible for day-to-day management of the Company.  Upon information and belief, Reilly is a resident of Maricopa County, Arizona.

12.     Richard Alan Handel ("Handel") served as a contract manufacturer for FreeLife from 1995 until June 2007, providing research and development, product development, and marketing services and was employed by FreeLife as Chief Product Officer providing similar services from June 2007, to present date.

13.     Earl Mindell ("Mindell") worked with the founders of FreeLife in 1995 and allegedly was involved in the formulation of FreeLife's Himalayan Goji Juice, and the spectral signature process for standardization of the volume and potency of Lycium barbarum polysaccharides ("LBPs") in each bottle of HGJ.  Upon information and belief, Mindell was an officer, employee and/or business partner of FreeLife from in or about 1995 until 2007, and the principal marketing representative for the Company.

14.     FreeLife has its principal place of business in Arizona, has sufficient minimum contacts with the State of Arizona, and/or otherwise has intentionally availed itself of the markets in Arizona through the promotion, marketing, and sale of FreeLife products in Arizona, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15.     Plaintiffs aver that at all times mentioned herein, the acts of Reilly, Handel, and Mindell were taken on behalf of FreeLife, within the scope of their authority as representatives and agents of FreeLife, and to promote the business interests of FreeLife.  Each of their acts were directed, approved, and/or ratified by FreeLife.

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

KELLER ROHRBACK **P.L.C.**
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

## STATEMENT OF FACTUAL BACKGROUND
## FOR ALL CAUSES OF ACTION

## I.

## FREELIFE'S PRODUCTS AND MISREPRESENTATIONS

16.     This action arises from FreeLife's manufacture, marketing, and sale of three separate Products: Himalayan Goji Juice ("HGJ"), since in or about 2003, GoChi Juice ("GoChi") since in or about January 2008, and TAIslim since in or about January 2009, (hereinafter referred to as "the Products").

17.     Upon information and belief, FreeLife was formed in or about 1994 to engage in the business of developing and selling nutritional products such as vitamins and herbal remedies.

18.     FreeLife hired Vita Quest International to provide research and development for its Products and established a joint venture relationship with Mindell for the development of Goji berry Products.  Handel was an employee of Vita Quest International who was assigned to work with FreeLife in research and development of its Products.

19.     Between 1995 and 2003, Handel and Mindell worked together in developing Goji berry Products for FreeLife.  In or about 2003, HGJ was introduced in the market and thereafter sold to the public through a distributor network and marketing plan also developed by Handel and Mindell.

20.     FreeLife was established as a direct sales company that distributed its Products through marketing distributors with whom FreeLife contracted.  These distributors would purchase FreeLife Products for their own consumption and for resale to other consumers.  In addition, FreeLife encouraged the distributors to find other persons to become FreeLife distributors for sale and consumption of the HGJ product.

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

21.     This direct sales marketing plan created a pyramid effect with proliferating sales for FreeLife and astounding income for many distributors, all of whom were paid on a commission basis with substantial incentives for signing up new distributors.  Upon information and belief, a large number of distributors were earning well in excess of $500,000 per year distributing HGJ.

22.     FreeLife advertised its Products through websites, goji events, mass e-mails and brochures, endorsements, business cards, telephone conferences with distributors, seminars, conventions, and direct communications with distributors.

23.     FreeLife's distributors advertised and promoted FreeLife Products through distributor websites, goji events, e-mails and brochures, endorsements, business cards, and direct communications with potential customers and other distributors.  Any distributor websites and any marketing materials used by distributors were required to be reviewed and approved by FreeLife's compliance department.

24.     At all relevant times, FreeLife has marketed and sold its Products in the United States, Canada, Australia, Asia, and Europe.

25.     From 2003 until 2008, FreeLife promoted Mindell as "Dr. Earl Mindell, R.Ph., Ph.D., . . . an internationally recognized expert on nutrition, drugs, vitamins, and herbal remedies" and the world's foremost authority on the goji berry.  During this period, Mindell likewise made these same representations about himself in connection with promotion, marketing, and sale of HGJ.

26.     In fact, Mindell received his Ph.D. from Pacific Western University, an unaccredited institution offering "public paid for bogus degrees," according to the Washington Post.  (*See,* Christopher Lee, *Public Paid for Bogus Degrees*, Wash. Post, May 12, 2004, at A21.)

27.     After FreeLife began marketing and selling HGJ, FreeLife published its 7 step process for production of HGJ.  Pursuant to the 7 step process, FreeLife

expressly or impliedly represented that it harvested vine-ripened berries from the Himalayas, that the berries were juiced to a puree by cold pressing, that the puree was combined with natural ingredients through a proprietary chill blending process to preserve the balance and content of active polysaccharides, that the juice was cold-filled into bottles, and that the product was subjected to a battery of tests, including spectral signature, polysaccharide analysis, and full microbiological testing.

28.    In connection with publication of its 7 step process, FreeLife made the following representations to actual and potential distributors and actual and potential consumers:

A.    The goji berry is one of the world's most powerful anti-aging foods;

B.    Polysaccharides are unique to goji, which is the only plant that contains unique goji bioactive LBPs;

C.    There are many varieties of goji, but only one that had been discovered by the early Himalayan healers and praised from ancient times in legends;

D.    Mindell exhaustively analyzed dozens of varieties of goji berries and discovered the one used by the early Himalayan healers and praised in the legends;

E.    A spectrometer can detect subtle differences between goji berries at the molecular level and can produce a graph which provides a unique fingerprint for any berries being tested;

F.    FreeLife is the only Company in the world that developed a spectral signature to identify, isolate, and harvest only those special goji berries with the exact nutrient profile of the legendary goji from the Himalayans.  FreeLife's spectral signature appears on every bottle to demonstrate that the consumer has purchased the highest-quality, most nutrient dense goji berries with the highest absorption in humans and that the consumer always receives the same high

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

potency and LBPs every time;

G.     Each bottle of HGJ contains the identical polysaccharides of 2.2 pounds of fresh goji berries;

H.     FreeLife's cold processing method extracts the juice without destroying any of the delicate, but extremely powerful polysaccharides;

I.      FreeLife does not heat process or pasteurize its Goji Juice because that would destroy all of the vital LPBs and nutrients of the Goji berry;

J.      FreeLife's HGJ contains raw Himalayan goji berries and live bioactive polysaccharides;

K.     HGJ does not contain artificially created chemical preservatives, but rather, contains whole natural preservatives of Peruvian balsam and mountain ash trees;

L.      Himalayan goji berries are superior to all other goji berries because they contain a group of four unique and active polysaccharides which provide wide-ranging health benefits by commanding many of the body's most important biochemical defense systems; and,

M.     HGJ has wide-ranging health benefits that retard the aging process and command and control many of the body's most important biochemical defense systems to fight disease.

29.     FreeLife representations relating to HGJ were promises and affirmations of fact used to sell HGJ, but were materially false and deceptive when made because:

A.     There is no reliable scientific evidence which supports the goji berry as an anti-aging food or that it is one of the world's most powerful anti-aging foods;

B.     Goji is not the only plant which contains polysaccharides, and there is no reliable scientific evidence that establishes that the goji berries contain

7

bioactive LBPs;

C.    There is no reliable scientific evidence that the early Himalayan healers discovered only one variety of goji plant that is used for healing purposes;

D.    There is no reliable scientific evidence or factual basis for the assertion that FreeLife discovered the one variety of goji berries used by the early Himalayan healers in legends;

E.    A spectrometer is one of the weakest tools used to identify unique chemical fingerprints for substances, and was not used by FreeLife to detect subtle differences between goji berries at the molecular level;

F.    FreeLife did not develop a spectral signature to identify, isolate, and harvest only special goji berries which contained the exact nutrient profile of the legendary Goji from the Himalayas;

G.    FreeLife's spectral signature is a fake and does not identify any specific type of LBPs nor demonstrate the highest quality, most nutrient dense goji berries with the highest absorption in nature.  Nor is there any reliable scientific evidence to support there assertions;

H.    There is no reliable scientific evidence to support that each bottle of HGJ contains the identical amount of polysaccharides in 2.2 pounds of fresh goji berries;

I.    FreeLife's 7 step process for production fails to disclose its heat processing and pasteurization of the Goji puree necessary to stabilize the chemical ingredients and inactivate enzymes;

J.    FreeLife's HGJ does not contain raw goji berries and live bioactive polysaccharides;

K.    HGJ contains artificially created chemical preservatives, not whole natural preservatives;

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

L.     Three is no reliable scientific evidence that FreeLife's alleged Himalayan goji berries are superior to all competitors because they contain four unique and active polysaccharides; and

M.     There is no reliable scientific evidence that FreeLife's goji berries provide wide-ranging health benefits by commanding many of the body's most important biochemical defense systems to fight disease.

30.     In or about 2003, Handel and Mindell collaborated on the writing of a book entitled *Goji: The Himalayan Health Secret* which was published under Mindell's name as author.  The book set forth 34 reasons why consumers should drink HGJ on a daily basis.

31.     In the book, Mindell and his collaborator, Handel, represented and claimed that HGJ's health benefits included curing, arresting or improving arthritis, heart disease, allergy disorders, cancer, diabetes, depressive disorders, digestive disorders, and other medical conditions (hereinafter referred to as the "HGJ curative health benefits").  Specifically, Mindell's book claimed that HGJ can fight cancer by repairing damaged DNA, halting genetic mutations that lead to cancer, improving recovery by increasing lymphocyte count, reducing side effects of chemotherapy and radiation, and enhancing production of cancer fighting IL-2.

32.     Mindell's book was written, published, and used by FreeLife as a marketing tool to promote its direct marketing program and to convince the public that HGJ provided unique health benefits that prevented or cured disease and prolonged life for daily users of its Products.  Handel and Mindell, acting on behalf of FreeLife, also collaborated on the production of a number of brochures including, but not limited to, "Goji and Cancer," "Goji and Depressive Disorders," and "34 Reasons to Drink Goji Juice Every Day," which were circulated to FreeLife distributors and other

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

customers as a sales tool (copies of the brochures are attached hereto as Exhibit A and incorporated herein).

33.     FreeLife representations relating to the HGJ curative health benefits were promises and affirmations of fact used to sell HGJ and were materially false and deceptive and not supported by any reliable scientific evidence.

34.     FreeLife sold HGJ at wholesale by the case (4 bottles to a case) for approximately $130 or by the bottle at a cost of approximately $35.   FreeLife distributors resold each of the bottles at retail to consumers for prices ranging from $35 to $50 a bottle.  As a result, a daily consumer of HGJ could easily spend $250 per month or more on their HGJ purchases.

35.     Upon information and belief, after publication of the Mindell book, FreeLife created a website at www.gojibook.com, which promoted the Mindell book, the 34 reasons for purchasing HGJ from FreeLife, and the health claims, and cures represented in the Mindell book.

36.     Mindell and Handel, acting on behalf of FreeLife, developed and put into place a marketing strategy to further promote its HGJ product and convince the public of the unique health benefits from drinking HGJ on a daily basis.  This strategy included the use of distributor meetings, distributor conference calls, and town meetings with prospective customers to promote its health claims and its "unique" process for producing HGJ.

37.     In 2005 and 2006, Mindell acting on behalf of FreeLife, was the star attraction at these meetings and made the outlandish representations set forth in paragraphs 27, 28, and 31, to distributors, consumers, and guests.  During these meetings, Mindell would introduce persons who would give testimonials claiming their medical problems had been cured after taking HGJ.

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

38.     At these "religious revival"-like meetings, Mindell repeatedly told his growing audiences that the incredible health benefits of HGJ were undeniable and that the plan was to close down all of the hospitals.

39.     In 2006, Mindell, acting on behalf of FreeLife, began telling his expanding audience that a breast cancer study produced by scientists at Sloan-Kettering Memorial Hospital had established that goji berries had provided promising results in fighting cancer cells in humans.   Shortly after that, certain FreeLife distributors were representing to customers that Sloan-Kettering Memorial Hospital had announced that it was providing Goji berries or Goji Juice to all of its cancer patients to fight cancer cells.   Each of these statements were blatantly false when made.

40.     In January 2007, the Canadian Broadcasting Company ("CBC") televised a news broadcast of an interview with Mindell discussing the FreeLife misrepresentations and scam perpetrated on consumers.   In the broadcast, Mindell once again touted the breast cancer study from Sloan-Kettering Memorial Hospital. However, the CBC broadcast included an interview with a scientist who denied that the test results showed any promise in the use of goji berries to treat humans for cancer.

41.     The CBC broadcast completely exposed Mindell as a charlatan and FreeLife's marketing program as a consumer fraud.

42.     After the CBC broadcast, FreeLife modified certain of its website representations which had been under attack in the broadcast.  For example, FreeLife modified its website to exclude specific representations that the goji berries in the HGJ were "raw" and also deleted references to Mindell's 34 health reasons. Notwithstanding, FreeLife continued to encourage its distributors to make these representations to potential purchasers of HGJ.

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

43.     In September 2007, Plaintiff David Lucas Burge published a website at www.breathe.org ("breathe website") which exposed many misrepresentations by FreeLife in its promotion and sale of HGJ.     It exposed the following misrepresentations, *inter alia*:

A.     FreeLife's goji berries are grown in China, not the Himalayas;

B.     Polysaccharides are not unique to goji and there is no reliable scientific support for FreeLife's claim that HGJ contains the four active polysaccharides (LBP-I, LBP-II, LBP-III, and LBP-IV);

C.     There is no evidence that each bottle of HGJ contains the identical polysaccharides of 2.2 pounds of fresh goji berries and such a claim is scientifically impossible;

D.     HGJ contains artificially created chemical preservatives, rather than whole natural preservatives of Peruvian balsam and mountain ash as represented;

E.     FreeLife's spectral signature is a fake and does not identify any specific type of LBPs.  It is not a graph from any spectral signature analysis, but rather is merely an artist's drawing;

F.     FreeLife's 7 step process for production of HGJ fails to disclose that it heat processes the goji Juice for sterilization purposes, which destroys certain of the LBPs and nutrients of the Goji berry;

G.     FreeLife's HGJ does not contain raw goji berries with live bioactive polysaccharides; and,

H.     There has been no reliable scientific testing or findings that goji berries and/or HGJ provide the health benefits and medical cures represented by FreeLife.

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

44.     Shortly after the CBC broadcast and the appearance of the breathe website, FreeLife announced that Mindell was no longer associated with the Company. From that point forward, Reilly and Handel assumed responsibilities as public spokespersons for FreeLife and principal marketing representatives.

45.     FreeLife modified again the FreeLife website to remove any association with Mindell and to avoid the controversy over its preservative claims and its claim of goji berry origin in the Himalayas.  To accomplish this, FreeLife publicized a new product, GoChi, which eliminated the Himalayan connection and represented that the product was preservative free.

46.     After these modifications to the FreeLife website, FreeLife continued to encourage its distributors to make many of the same misrepresentations openly made before the CBC broadcast, but now deleted from the FreeLife website and promotional materials.

47.     Thereafter, FreeLife used a series of anonymous websites such as www.gojibook.com and www.gojitools.com to provide false and/or misleading information to its distributors about FreeLife's Goji Products which information was intended to be used by distributors to promote and sell FreeLife's goji Products.  These websites were specifically used to continue its misrepresentations that HGJ was produced by a cold process to ensure that the juice contained raw berries and live bioactive polysaccharides.  These websites also anonymously continued to make the false representations regarding health benefits and medical cures.

48.     In promoting these anonymous websites, FreeLife represented to its distributors that these websites were independently posted by authoritative and impartial parties unrelated to FreeLife.  FreeLife also encouraged its distributors to direct customers and potential customers to the sections of these websites which claimed the health benefits and curative powers of the goji berry.  In fact, each of these

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

websites had been created by FreeLife or persons acting at the direction of the FreeLife.

49.     Although FreeLife has denied that it sponsored or created these anonymous websites, the compliance department for FreeLife must review and approve all websites used by its distributors and Reilly has admitted in a deposition in another case that the FreeLife's compliance department reviewed and approved most of these websites.

50.     On or about January 8, 2008, FreeLife announced the development of a new product, GoChi, which was offered for sale at wholesale prices of $36.50 per bottle, $134.95 for a case of 4 bottles, and $674 for a 6 case value pack.  The bottles were then sold at retail for prices up to $52 per bottle.

51.     In connection with the promotion and sale of GoChi, FreeLife's official website represented the following:

A.     GoChi contains 30% more LBPs than present in HGJ;

B.     GoChi is the next generation in HGJ and is scientifically demonstrated to deliver results in just 14 days;

C.     GoChi only uses berries that conform to FreeLife's precise spectral signature balance and potency of LBPs;

D.     A statistical testing study between day 1 and day 15 reveals significant health benefits, including increased energy, less fatigue, increased focus and mental acuity, improved athletic performance, reduced stress, increased feelings of calmness and contentment, feeling happier and healthier, better quality of sleep, easier ability to awaken in the morning, and promoting bowel regularity (hereinafter referred to as the "GoChi health benefits"); and,

E.     FreeLife has an immune system study and an  antioxidant study, which provides scientific evidence  of the health benefits from GoChi, including but

14

not limited to, benefits to the immune system and the musculoskeletal system. The references to the immune system study and antioxidant study were similar to the representations openly made by FreeLife and Mindell prior to 2008, claiming the curative powers of the goji for treating cancer, arthritis, and other medical conditions.

52.     FreeLife's representations relating to GoChi were promises and affirmations of fact used to sell GoChi, but were materially false and deceptive in the following respects:

A.     GoChi does not contain 30% more LBPs than present in HGJ and there is no reliable scientific evidence to support that representation;

B.     GoChi was not an improved or advanced product to HGJ, but was substantially identical except that GoChi did not contain any preservatives;

C.     GoChi does not use berries picked to conform to a precise spectral signature balance and potency of LBPs and there is no scientific support for same;

D.     There is no reliable scientific evidence to support the GoChi health benefits or the representation of health improvements after 15 days;

E.     FreeLife failed to disclose that its statistical testing study was performed by FreeLife on its own employees and did not constitute an independent, randomized testing study scientifically reliable under the circumstances; and,

F.     There was no reliable scientific evidence to support its claim that GoChi provided health benefits to the immune system and the musculoskeletal system.

53.     FreeLife continued to encourage expressly and/or impliedly its distributors to use the same false and deceptive representations in the distributor websites previously used by FreeLife, including, but not limited to, the representations of cold-processing, no heat processing, raw berries with live bioactive

KELLER ROHRBACK **P.L.C.**
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

polysaccharides, the 34 health reasons, and the curative powers of goji juice in fighting cancer and other medical diseases and conditions.

54.     As a result, in 2008 FreeLife distributor websites contained false representations that GoChi contained raw berries with live bioactive polysaccharides, was not heat processed, and provided curative powers to fight cancer and other diseases.

55.     FreeLife ratified each of the representations in distributor websites by action of its compliance department in approving or not objecting to the representations in the distributor websites.

56.     On or about January 10, 2009, FreeLife announced the development of TAIslim, a "triple patent pending weight loss product (drink) with Goji Juice that helps you lose weight, fight abdominal fat, enhance metal control appetite while feeling more energy."  This product was offered for sale at $36.50 per single bottle or $134.95 per case (4 bottles).

57.     In connection with the promotion and sale of TAIslim, FreeLife's official website represented the following:

A.     TAIslim is a simple weight loss drink that you take with a full glass of water for 2 – 3 meals each day;

B.     The TAIslim formula "is backed by years of scientific research and study" (www.TAI-Fit.com, *What is TAIslim?*);

C.     TAIslim is the first weight loss product to target all 4 different causes of weight gain and fat storage determined by scientists;

D.     TAIslim contains GoChi Juice which is clinically shown to reduce the body's production of stress hormones which attribute to unwanted belly fat;

E.     TAIslim contains nothing but natural ingredients with no synthetic additives;

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088 FAX (602) 248-2822

F.    TAIslim increases metabolism so that more calories can be burned;

G.    TAIslim works to early on release the CCK hormone responsible for your brain sending the message that you are full, thereby controlling appetite and unhealthy cravings;

H.    TAIslim is the only weight loss product that contains NuFlora.  NuFlora works to clean the body of metabolic toxins and rid the body of bacteria that can cause weight gain;

I.    There are 27 health reasons to continue to take at least one daily serving of TAIslim, including but not limited to, cleansing and detoxifying, absorbing fewer calories from the foods you eat, fighting insulin resistance, improving regularity and maintaining colon health, keeping a healthy heart, maintaining normal, healthy cholesterol and triglycerides, inhibiting dangerous lipid peroxidation, supporting normal blood pressure, building healthy muscles, improving your immune system defenses, and improving thyroid health.  A copy of the *27 Reasons to Drink TAISlim*, published by FreeLife, is attached hereto as Exhibit B and incorporated herein; and,

J.    TAIslim is  a safe product.

58.    FreeLife's representations regarding TAIslim are promises and affirmations of fact which are materially false and deceptive in the following respects:

A.    There is insufficient reliable scientific or medical evidence that TAIslim is effective and safe as a weight loss supplement;

B.    TAIslim's formula is not backed by years of scientific research and study;

C.    There is insufficient reliable scientific or medical evidence that TAIslim is the first weight loss product to target all causes of weight gain and fat storage;

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

D.     There is no reliable scientific or medical evidence which clinically shows that TAIslim reduces the body's production of stress hormones which attribute to belly fat;

E.     TAIslim contains synthetic additives such as sucralose;

F.     There is insufficient reliable scientific or medical evidence that TALslim increases metabolism so that more calories can be burned;

G.     There is no reliable scientific evidence that TAIslim works to early on release the CCK hormone for controlling appetite and food craving;

H.     There is no reliable scientific evidence to support its claim that NuFlora cleans the body of metabolic toxins and bacteria that can cause weight gain;

I.     There is no reliable scientific evidence to support the 27 health reasons for continued use of TAIslim; and,

J.     There is no reliable scientific evidence to support the safety of this product for prolonged use.

59.     Defendant has elected to market its goji Products with wild claims that long-term use of them will stop or slow the aging process, cure diseases such as cancer, and provide a safe weight loss remedy along with a multitude of other exaggerated health benefits.  Defendant has falsely promised that these health results are based on pure science and well documented health studies.

60.     When a consumer is diagnosed with a serious disease, with little hope of recovery, or is frightened of aging and the changes in health brought by the aging process, or overweight, the consumer becomes particularly vulnerable to any claim that a product could lessen or eliminate such illness or condition.  By targeting these consumers, Defendant has focused its marketing efforts upon a predominantly wide and susceptible group of consumers.

61.     American history is filled with legends and stories of snake oil salesmen

18

selling tonics to consumers with promises that such miraculous potions would cure most common illnesses.  Today, salesmen may no longer sell snake oil, but the modern consumer continues to search for and buy herbal products which claim to remedy health conditions.

62.     FreeLife is a modern day snake oil salesman, churning out herbal goji Products for purchase by consumers, based upon outrageous claims of health benefits unsupported in science.  Vulnerable consumers have been targeted and have spent thousands of dollars for consumption of these over-priced and deceptive Products.

63.     FreeLife has assembled a distributor network by promoting its Products through false and deceptive representations regarding the Products and their health benefits and the income that can be earned by the distributors.  The distributors in turn have carried the false and deceptive representations to targeted consumers and/or other potential distributors who have purchased the Products for their own consumption or for resale.

64.     FreeLife has generated millions dollars of income over the last five years, based upon its deceptive marketing program and from the sale of a vastly overpriced product.  In doing the acts alleged herein, Defendant has acted with oppression, fraud, and malice, and Plaintiffs and the Class members are entitled to punitive damages.

## II.

## PLAINTIFFS' PURCHASES AND CONSUMPTION OF FREELIFE RODUCTS

### A.     Plaintiff David Lucas Burge

65.     In October 2005, Steve Leaser, a FreeLife distributor, solicited and recruited Plaintiff David Lucas Burge ("Burge") to purchase and consume HGJ and to serve as a FreeLife distributor.  Mr. Leaser, acting on behalf of FreeLife, as its sales agent, made each of the false and deceptive misrepresentations to Burge about HGJ set

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

forth in Paragraphs 27-28 of this Complaint.  He also represented to Plaintiff Burge the 34 health reasons for continued use of HGJ set forth in the Mindell book and the curative powers of HGJ.

66.     Based upon these representations, Plaintiff Burge purchased and consumed approximately 2 bottles of HGJ.

67.     Subsequently, Plaintiff Burge personally spoke with Defendant Mindell who confirmed the false and deceptive representations.

68.     After consuming the product, Plaintiff Burge elected not to become a distributor or further user of the HGJ.

**B.     Plaintiff Alastair Dick**

69.     In or about April 2006, a FreeLife distributor solicited and recruited Plaintiff Alastair Dick ("Dick") to purchase and consume HGJ and to serve as a FreeLife distributor in Australia.  The FreeLife distributor made each of the false and deceptive representations to Plaintiff Dick about HGJ set forth in Paragraphs 27-28 of this Complaint.  It was also represented to Plaintiff Dick the 34 health reasons for continued use of HGJ as set forth in the Mindell book and the curative powers of HGJ.

70.     In reliance upon these representations, Plaintiff Dick signed up as a FreeLife distributor and began consuming and selling HGJ.  Plaintiff Dick sold and consumed HGJ from April 2006, through September 2007.

71.     Plaintiff Dick consumed HGJ on the representation of FreeLife that it would improve his arthritis and eyesight, and would improve his natural health.  After he determined that HGJ was providing him no health benefits and that FreeLife was soliciting sales based on false and deceptive information, he stopped selling and consuming HGJ.

.  .  .

.  .  .

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

### C.    Plaintiff Lynda Forgette

72.    In or about January 2004, FreeLife's distributor, Jerry Shaw, advised Plaintiff Lynda Forgette ("Forgette") of the health benefits of HGJ and signed her up as a distributor of HGJ in Ontario, Canada.  In soliciting Plaintiff Forgette, Mr. Shaw, as FreeLife's agent represented that Forgette's consumption of HGJ would relieve her back pain, reduce her high blood pressure, reduce risk of diabetes and heart disease, as well as provide her many other health benefits.  In addition, Plaintiff Forgette was told that she could pay for the costs of her consumption and earn substantial additional income by becoming a FreeLife distributor.

73.    From January 2004, through February 2009, Plaintiff Forgette was a FreeLife distributor purchasing not less than 1 case of HGJ per month prior to January 2008, or 1 case of GoChi per month, after its introduction in January 2008.

74.    Prior to the CBC broadcast exposing Mindell, Plaintiff Forgette actively promoted the sale of HGJ and consumed within her family unit (including her grandchildren) 4 to 5 cases per month.  In fact, she and her family members consumed as much as 5 to 6 cases per month during 2004-2005.

75.    After the CBC broadcast, Plaintiff Forgette became uncomfortable promoting HGJ to consumers and she thereafter declined to personally promote and sell HGJ and other FreeLife Products to the consuming public.

76.    Without the income from active distributor sales, Plaintiff Forgette and her family members reduced their purchases of the HGJ, but continued to consume 1 to 4 cases per month.

77.    In 2008, FreeLife announced its introduction of GoChi which it claimed had been produced after 4 years of testing and was superior as a product to HGJ in all respects.

.  .  .

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

78.   At that time, Plaintiff Forgette stopped purchasing HGJ and started purchasing and consuming GoChi.  She and certain of her family members continued to consume the product until in or about March 2009.

79.   Upon information and belief, Plaintiff Forgette alleges that FreeLife has been diluting its GoChi product during the last 4 to 6 months without disclosure to its distributors or the public.

### D.   Pamela Krause

80.   In January of 2006, Plaintiff Pamela Krause ("Krause") joined FreeLife as a distributor after learning from a family member (who was a FreeLife distributor and authorized representative), of the many alleged health benefits of HGJ. Subsequently she learned from FreeLife representative Otis DeWitt, who made a number of presentations to promote and hype the product, that HGJ would help relieve her husband's conditions of diabetes and erectile dysfunction, and Krause's weight and sleeping problems.

81.   In connection with her signing up as a distributor, FreeLife through its authorized representatives made each of the representations to Plaintiff Krause as alleged in Paragraphs 27-28 of the Complaint, as well as many of the health benefit representations contained in Mindell's book, "The Himalayan Health Secret."  Plaintiff Krause relied upon the truth of these representations in conducting a FreeLife distributorship as well as in consuming HGJ.

82.   After approximately 8 months of consuming HGJ, Plaintiff Krause and her husband saw no improvement in their health and she decided to end her distributorship and stop consuming HGJ.

83.   In December 2008, FreeLife, through its authorized agent John Roesener, approached Plaintiff Krause and explained to her FreeLife's new product TAIslim which he described as a miracle weight loss liquid supplement.  In January

2009, after the product was publicly announced and marketed, he made the representations to her on behalf of FreeLife as alleged in Paragraph 53 of this Complaint and asked her to sign up as a distributor.

84.     At that time Plaintiff Krause was provided with various brochures and promotional materials produced by FreeLife which she reviewed and relied upon in signing up as a TAIslim distributor.

85.     In January 2009, Plaintiff Krause began consuming the product on a daily basis and selling the product to others for consumption and resale.

86.     After a short period of use, Plaintiff Krause began experiencing shoulder pain.  After stopping use of the product, the pain disappeared.  She decided to start using TAIslim again, but the pain returned at an increased level.  She stopped using the product again and then resumed taking it with the same results.

87.     Plaintiff Krause also received complaints from multiple customers who had purchased the product within Krause's distributor group that they had experienced adverse effects.

88.     Upon investigation, Plaintiff Krause discovered that TAIslim contained sucralose, a substance linked to adverse health effects, including abdominal pain, joint pain, achiness, back pain, dizziness, eye pain, fibromyalgia, and headaches.  She also learned that, despite FreeLife's representations, there were no reliable long-term studies proving that the substance was safe.

89.     After Plaintiff Krause became aware of a TAIslim customer who had ended up in a hospital emergency room after taking TAIslim, she determined that it was not safe to sell the product and she subsequently went inactive with her distributorship.  She gave notice of her resignation to FreeLife in or about April 2009.

90.     Plaintiff Krause notified a consumer's organization of her concerns about TAIslim and its misrepresentations regarding the safety of the product by e-mail

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

dated April 5, 2009, a copy of which is attached hereto as Exhibit C and incorporated herein.

91.     Plaintiff Krause's April 5, 2009, e-mail was forwarded to FreeLife and Defendant Handel responded on behalf of FreeLife in April 2009, admitting use of sucralose in TAIslim, but denying that the product was in any way unsafe.  A copy of his e-mail is included in Exhibit C and incorporated herein by reference.

### E.     Plaintiff Fred Anthony Reyes

92.     In or about June 2007, FreeLife's distributor, Neil Chantara, solicited Plaintiff Fred Anthony Reyes ("Reyes") to purchase and consume HGJ and recruited him as a FreeLife distributor in Hawaii.

93.     In the solicitation, Mr. Chantara, as FreeLife's sales agent, made each of the false and deceptive representations to Reyes set forth in Paragraphs 27-28 of the Complaint, as well as the health benefits of drinking HGJ daily as set forth in the Mindell book.

94.     Plaintiff Reyes relied upon these representations and purchased 3 cases of HGJ.  During 2007, he consumer over 12 bottles of HGJ.

95.     Prior to making any distributor sales, Reyes learned that FreeLife and its sales agent had made multiple misrepresentations to him regarding the product. Reyes, thereafter, terminated his distributorship and stopped purchasing and/or consuming HGJ.

### F.     Plaintiff David Porter Wilson

96.     In or about January 2004, a FreeLife distributor, solicited Plaintiff David Porter Wilson ("Wilson") to purchase HGJ and recruited him to be a FreeLife distributor.  During the course of the solicitation and recruitment, the FreeLife sales agent made each of the false and deceptive representations set forth in Paragraphs 27-28 of this Complaint.  It was also represented to Plaintiff Wilson the 34 health reasons

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

for continued use of HGJ set forth in the Mindell book and the curative powers of HGJ.

97.     In reliance upon these representations, Plaintiff Wilson signed up as a FreeLife distributor and began purchasing, selling, and consuming HGJ.

98.     From January 2004 until February 2008, Plaintiff Wilson personally consumed approximately 2 cases of HGJ per month and sold HGJ as a distributor.

99.     After the CBC broadcast, Plaintiff Wilson was uncomfortable making any health representations to customers or potential customers and refused to talk about the "medical miracles."

100.    Plaintiff Wilson terminated his distributorship after disputes with his Upline Sponsor, Sandy Moreland, who wanted him out of the organization for refusing to talk to customers about the "medical miracles" of goji Products.

## CLASS ACTION ALLEGATIONS

101.    Plaintiffs bring this action both on behalf of themselves, and as a class action on behalf of the following Class ("the Class").

> All individuals who, within the four years prior to the filing of this Complaint ("Class Period"), purchased HGJ, GoChi, and/or TAIslim (hereinafter referred to as the "Products") from FreeLife International, Inc.

102.    Although Plaintiffs do not know the exact number of the members of the Class, since such information is within the exclusive control of FreeLife, Plaintiffs believe that due to the nature of the commerce involved, the number of members of the Class are sufficiently numerous, most likely thousands of purchasers, that joinder of all Class members is impracticable.  Indeed, Plaintiffs believe that FreeLife's revenues from the sale of the Products exceed $100,000,000 per year.

103.    The claims of Plaintiffs are typical of the Class claims in that Plaintiffs purchased the Products in reliance upon the misrepresentations, omissions, and

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

concealments, and believed that:

A.      HGJ contained 2.2 pounds of fresh Himalayan goji berries;

B.      FreeLife's unique spectral analysis enabled it to identify and harvest a certain type of goji berry with the exact nutrient profile of the legendary goji from the Himalayas;

C.      FreeLife's spectral signature on each bottle of HGJ demonstrated that the goji berries used met the highest standards for density of polysaccharides, absorption in humans, and highest potency;

D.      FreeLife produced HGJ by a cold processing method with no heating so that the vital LPBs and nutrients of the goji would not be destroyed;

E.      HGJ contains raw Himalayan goji berries with live bioactive polysaccharides;

F.      HGJ contains only whole natural preservatives and no artificially created chemical preservatives;

G.      HGJ contains four unique and active polysaccharides which provide wide-ranging health benefits that retard the aging process and control many of the body's most important biochemical defense systems to fight disease;

H.      HGJ had the ability to cure, arrest, or improve certain diseases and medical conditions;

I.      GoChi contained 30% more LPBs than present in HGJ;

J.      GoChi goji berries also conformed to FreeLife's spectral signature analysis assuring that it met the highest standards for density of polysaccharides, absorption in humans, and highest potency;

K.      GoChi was produced using the same cold process as HGJ to assure that the vital polysaccharides of the goji were not destroyed;

L.      GoChi provided significant health benefits as represented;

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088 FAX (602) 248-2822

KELLER ROHRBACK **P.L.C.**
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

M.    FreeLife had authoritative scientific studies which confirmed the health benefits from long-term use;

N.    TAIslim formula using goji juice was backed by years of scientific research and study;

O.    TAIslim is a safe weight loss product using a unique formula; and,

P.    TAIslim provides significant health benefits besides weight loss from long-term use.

104.    In addition, the claims of Plaintiffs are typical of the Class in that FreeLife made the same representations, directly or indirectly, to all members of the Class, the representations were false or misleading as to all members of the Class, and FreeLife benefitted and was unjustly enriched from the sales in the same manner as to all members of the Class.

105.    Numerous questions of law and fact are common to the Class, which predominate over any individual issues.  Questions of law and fact which are common to the Class include, without limitation:

A.    Whether FreeLife made representations to consumers about the quality, characteristics, and benefits of the goji berries used in its Products that rendered the Products effective in curing, arresting, or improving certain diseases and medical conditions, and retarding the aging process, and whether such representations were false and/or misleading;

B.    Whether FreeLife made representations to consumers about the methods of production of its Products and the characteristics and benefits of the Products resulting therefrom and whether such representations were false and/or misleading;

C.    Whether FreeLife made representations to consumers about the characteristics, uses, benefits, or qualities of its Products and whether such

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

representations were false and/or misleading;

D.     Whether FreeLife made representations to consumers about its use of spectral signature analysis in identifying, isolating, and harvesting goji berries and its use of a unique spectral signature on each bottle of HGJ and GoChi and whether such representations were false and/or misleading;

E.     Whether FreeLife targeted a predominantly susceptible group of consumers and thus whether the "reasonable consumer standard should apply";

F.     Whether FreeLife truthfully advertised its Products to its distributors;

G.     Whether FreeLife and/or its compliance department reviewed, approved, and/or ratified the product representations of its distributors in websites and other forms of promotion, advertising, and solicitations;

H.     Whether FreeLife created, approved, and/or ratified the anonymous websites used by distributors for promotion, advertising, and solicitation of FreeLife's Products;

I.     Whether FreeLife misled and/or confused consumers, committed unfair business practices, and/or false advertising by relying upon and referring consumers to Mindell's book and certain alleged health studies;

J.     Whether FreeLife knew or should have known that the Products did not have the characteristics, uses, benefits, or qualities for which it advertised and marketed the Products;

K.     Whether FreeLife breached express or implied warranties;

L.     Whether FreeLife was unjustly enriched by its conduct; and,

M.     The nature and extent of damages and other remedies to the Class members caused by FreeLife's conduct.

106.     Plaintiffs will fairly and adequately represent the interests of the Class in that Plaintiffs are typical purchasers of the Products.   Furthermore, Plaintiffs have

retained competent counsel experienced in class action litigation.  Plaintiffs' counsel will fairly and adequately protect the interests of the Class.

107.   This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.   The Class is readily definable.   A class action will enable claims to be handled in an orderly and expeditiously manner.   A class action will save time and expense and will ensure uniformity of decisions.

108.   The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of FreeLife.  Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis.   Even if the Class members themselves could afford such individual litigation, the court system could not.

109.   Individual litigation of the legal and factual issues raised by the conduct of FreeLife would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.  Given the similar nature of the Class members' claims and the law applicable thereto, the Court and the parties will easily be able to manage a class action.

110.   Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for FreeLife.

111.   Injunctive relief is appropriate to the Class as a whole because FreeLife has acted or refused to act on grounds generally applicable to the Class.

.  .  .

.  .  .

KELLER ROHRBACK **P.L.C.**
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

## COUNT ONE

## UNJUST ENRICHMENT

112.   Plaintiffs incorporate by reference all of the preceding allegations of this Complaint.

113.   FreeLife has benefited and been unjustly enriched by the above-alleged wrongful conduct.   FreeLife has sold the Products HGJ, GoChi, and TAIslim to Plaintiffs and members of the Class, based upon misrepresentations as to the composition, production process, and health benefits from prolonged use of the Products and its employment of deceptive practices.

114.   FreeLife was aware of the falsity of these representations and its employment of deceptive practices and intended to mislead and deceive individuals into the purchase and prolonged use of these Products.

115.   FreeLife has knowledge of the benefits received from the sale of Products by false representation and deception, and has voluntarily accepted and retained these benefits.

116.   The circumstances as described herein are such that it would be inequitable for FreeLife to retain these ill-gotten benefits without paying the value thereof to Plaintiffs and members of the Class.

117.   Plaintiffs and members of the Class are entitled to the amount of FreeLife's ill-gotten gains, including interest, resulting from its unlawful, unjust, and inequitable conduct as described above.

## COUNT TWO

## BREACH OF EXPRESS WARRANTY (A.R.S. § 47-2313)

118.   Plaintiffs incorporate by reference all of the preceding allegations of this Complaint.

119.   This claim is asserted on behalf of Plaintiffs and a Class of all purchasers

of the Products who purchased them within four years of the filing of this Complaint.

120.   The Products are merchandise and consumer goods advertised and sold to the public by FreeLife.

121.   The Products were sold by FreeLife to Plaintiffs and members of the Class pursuant to affirmations of fact or promises relating to the goods and descriptions of the goods which became part of the basis of the bargain.

122.   The affirmations of fact, promises, and descriptions of the goods failed to conform to the affirmation, promise, or description.

123.   By reason thereof, FreeLife breached expressed warranties made to Plaintiffs and members of the Class.

124.   As a proximate result thereof, Plaintiffs and the members of the Class have been damaged in an amount which is presently unascertainable, but which will be determined prior to trial.

## COUNT THREE

## BREACH OF IMPLIED WARRANTY
### (A.R.S. §§ 47-2314 AND 47-2315)

125.   Plaintiffs incorporate by reference all of the preceding allegations of this Complaint.

126.   This claim is asserted on behalf of Plaintiffs and a Class of all purchasers of the Products who purchased them within four years of the filing of this Complaint.

127.   The Products are merchandise and consumer goods advertised and sold to the public by FreeLife.

128.   The Products were sold to Plaintiffs and members of the Class pursuant to the implied warranties of merchantability that they would pass without objection in the trade under the contract description, that they were fit for the particular purposes for which the goods were used, that they were adequately packaged and labeled, and

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

that they conformed to the promises or affirmations of fact made on the container or label.

129.   The Products were not merchantable.  The Products do not pass without objection in the trade.  The Products are not fit for the health purposes represented.  The Products are not adequately packaged and labeled.  The Products do not conform to the affirmations of fact or promises made on the container and label.

130.   The Products were sold by FreeLife with the implied warranty of fitness in that FreeLife had reason to know of the particular purposes for which the Products were required (*i.e.*, for anti-aging and the health benefits represented by FreeLife in connection with each Product), and Plaintiffs and members of the Class replied upon Defendant's skill and judgment to furnish suitable goods.

131.   Plaintiffs believe and aver that the Products were not suitable for the purposes for which they were required, and/or there is no reliable evidence that the Products prevent or retard aging and/or provide the health benefits represented.

132.   Plaintiffs and the members of the Class reasonably relied upon the expertise, skill, judgment, and knowledge of FreeLife and upon its implied warranties of merchantability, fitness for particular purpose, adequate packaging and labeling, and conformity to promise and affirmations of fact.

133.   As a proximate result thereof, Plaintiffs and members of the Class of purchasers and users have been damaged by FreeLife in an amount presently unascertainable, but which will be determined from discovery prior to trial.

134.   Plaintiffs and members of the Class are entitled to a refund of the purchase price of Products purchased and consumed, consequential and incidental damages, costs and expenses, including attorney's fees.

.   .   .

.   .   .

KELLER ROHRBACK **P.L.C.**
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

KELLER ROHRBACK P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

1

2

3

## COUNT FOUR

## VIOLATION OF ARIZONA CONSUMER FRAUD ACT
### (A.R.S. § 44-1522)

4

5

135.    Plaintiffs incorporate by reference all of the preceding allegations contained in this Complaint.

6

7

136.    This claim is asserted on behalf of Plaintiffs and a Class of all purchasers of the Products who purchased them within one year of the filing of this Complaint.

8

9

10

137.    Plaintiffs and members of the Class are individuals who have purchased FreeLife Products pursuant to advertisement and solicitation by FreeLife and its authorized representatives.

11

12

13

14

15

138.    FreeLife has engaged in unlawful practices under the Arizona Consumer Fraud Act § 44-1522 by employing deception, deceptive acts or practices, fraud, false pretenses, false promises, misrepresentations or concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission in connection with the sale or advertisement of the FreeLife Products.

16

17

139.    FreeLife's conduct was at all times willful in that it knew or should have known that its conduct was of a nature prohibited by § 44-1522.

18

19

20

21

140.    As a proximate cause of FreeLife's acts of wrongdoing in violation of A.R.S. § 44-1522, Plaintiffs and members of the Class have been damaged in an amount which is presently unascertainable, but which will be determined from discovery prior to trial.

22

23

24

141.    Plaintiffs and the members of the Class are entitled to the award of punitive damages for the willful, wanton, and malicious practices by FreeLife, in violation of the Arizona Consumer Fraud Act.

25

.  .  .

26

.  .  .

KELLER ROHRBACK **P.L.C.**
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822

## COUNT FIVE

## ACTION FOR INJUNCTIVE RELIEF

142.    Plaintiffs incorporate by reference all of the preceding allegations contained in this Complaint.

143.    Unless restrained and enjoined by order of this Court, FreeLife will continue to engage in consumer fraud by the making of materially false and deceptive representations and affirmations of fact concerning the Products.

144.    Unless restrained and enjoined by order of this Court, the public and the members of the Class will continue to suffer irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and as representatives of all other persons similarly situated, pray for judgment against FreeLife as follows:

1.    An order certifying the Class and any appropriate sub-class thereof, and appointing certain of the Plaintiffs and their counsel to represent the Class;

2.    An award of general damages according to proof;

3.    An award of special damages in an amount sufficient to deter and make an example of Defendant;

4.    An award of restitution in an amount according to proof;

5.    Disgorgement in an amount according to proof;

6.    An award of consequential damages;

7.    An award of incidental damages;

8.    A temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Defendant and its agents, servants, employees, and all persons acting under or in concert with them, to cease and desist from the following acts:

a.  Selling, marketing or advertising the Products with any materially false and/or deceptive representations regarding the Products;

b.  Selling, marketing or advertising the Products with any reference to health benefits unsupported by reliable scientific evidence;

9.     For reasonable attorneys' fees;

10.    For costs incurred herein;

11.    For prejudgment interest; and

12.    For all general, special, and equitable relief to which the Plaintiffs and the members of the Class are entitled to by law.


DATED this  29th day of May, 2009.


.                      KELLER ROHRBACK, P.L.C.


By:      _____/s/ Gary A. Gotto_____
         Gary A. Gotto
         Gary D. Greenwald
         3101 North Central Avenue, Suite 1400
         Phoenix, Arizona 85012
         Attorneys for Plaintiffs

KELLER ROHRBACK  P.L.C.
ATTORNEYS AT LAW
SUITE 1400
3101 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2643
TEL. (602) 248-0088  FAX (602) 248-2822