**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Lucas Burge; Alastair Dick; Lynda Forgette; Pamela Krause; Fred Anthony Reyes; David Strobel,<br><br>Plaintiffs,<br><br>vs.<br><br>Freelife International, Inc.,<br><br>Defendant. | No. CV 09-1159-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant Freelife International, Inc.'s Motion to Dismiss the Amended Complaint (Doc. # 12). For the reasons that follow, the Court grants in part and denies in part Freelife's motion.

Freelife is engaged in the business of developing and selling nutritional products such as vitamins and herbal remedies. Three of Freelife's products are at issue in this case: Himalayan Goji Juice, GoChi Juice, and TAIslim. Each of the Plaintiffs have either used and/or sold at least one of these Freelife products. Plaintiffs bring this action, seeking redress for alleged acts of misrepresentation and deception in the marketing and sale of these products. In addition to seeking injunctive relief, Plaintiffs allege four claims for relief: unjust enrichment, breach of express warranty, breach of implied warranty, and violation of Arizona's Consumer Fraud Act.

///

# ANALYSIS

Freelife argues that Plaintiffs' complaint should be dismissed for a lack of subject matter jurisdiction, a failure to plead fraud with particularity as required by Rule 9(b), and a failure to state a claim under Rule 12(b)(6). The Court will first address Freelife's argument concerning this Court's lacking subject matter jurisdiction over Plaintiffs' claims, as granting Freelife's motion on this ground would cause Freelife's other objections to become moot.

*Rule 12(b)(1)*

In a Rule 12(b)(1) motion, "[t]he party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir. 1989). The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the court. *See* Fed.R.Civ.P. 12(h)(3).

The rule regarding the amount in controversy for cases brought originally in federal court is the legal certainty rule:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938) (footnotes omitted). *See also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). "A claim in excess of the requisite amount, made in good faith in the complaint, satisfies the jurisdictional requirement." *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (citing *St. Paul Mercury,* 303 U.S. at 288).

A timely challenge by the opposing party to federal subject matter jurisdiction "shift[s] the burden to the [party invoking jurisdiction] to show that it does not appear to a legal certainty that their claims are for less than the required amount." *U.S. v. S. Pac. Transp.*

*Co.,* 543 F.2d 676 (9th Cir. 1976) (citing *Gibbs v. Buck,* 307 U.S. 66, 72 (1939); *St. Paul Mercury,* 303 U.S. at 288-89). The Ninth Circuit has described the application of the legal certainty test:

> Generally speaking, the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (citing 14A WRIGHT, MILLER, AND COOPER, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION, § 3702 at 48-50 (2d ed. 1985)). Legal certainty is a high standard–the Ninth Circuit has "permitted a determination of 'legal certainty' when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." *Id.* Other circuits commenting on this rule have stated that "even where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 397 (2d Cir.2003) (quoting *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982)).

Plaintiffs allege that the Court has jurisdiction based upon 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy exceeds $5,000,000, and Plaintiffs' are seeking a class action suit "in which most members of the class of Plaintiffs are citizens of a state different from the state of incorporation or principal place of business of Defendant." (Doc. # 10 at p. 10, ¶ 2.) Freelife contests that the amount in controversy exceeds $5,000,000. After reviewing Plaintiffs' complaint, the Court cannot conclude to a legal certainty that the amount in controversy does not exceed $5,000,000.

Plaintiffs do not seek a specific dollar amount in their prayer for relief. Plaintiffs do allege, however, the wholesale and retail prices of the Freelife products at issue. The wholesale and retail prices of the products will form the basis of damages for Plaintiffs' claims of unjust enrichment and breach of express and implied warranties. Moreover,

Plaintiffs also allege that Freelife's revenues form the sale of the products at issue exceed $100,000,000 per year. While revenue figures do not forecast the precise amount of Plaintiffs' damages, such figures do shed some amount of light with respect to Plaintiffs' claims of unjust enrichment and breach of express and implied warranties. Additionally, Plaintiffs' allege that the size of the class they are seeking to certify will include "most likely thousands of purchasers." (Doc. # 10 at p. 27, ¶ 108.) When viewed in the aggregate, the Court cannot say that Plaintiffs' claims do not exceed $5,000,000. 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.")

This case does not involve a contract the terms of which limit Plaintiffs' possible recovery, nor is there a specific rule of law applicable in this case that would serve to limit the amount of damages recoverable. There are no independent facts before the Court to show that the amount of damages was claimed merely to obtain federal court jurisdiction. *See Pachinger*, 802 F.2d at 364. Given the high standard of the legal certainty test and the allegations in Plaintiffs' complaint as discussed above, the Court cannot say to a legal certainty that Plaintiffs' claims do not exceed $5,000,000. As such, the Court must deny Freelife's motion to the extent it urges that this Court lacks subject matter jurisdiction.

*Rule 9(b)*

Freelife contends that Plaintiffs failed to plead with particularity the circumstances of the fraudulent acts that form the basis of Plaintiffs' claims for unjust enrichment, breach of warranty, and violation of the Arizona Consumer Fraud Act. The Court disagrees.

Rule 9(b) requires the party alleging fraud to "state with particularity the circumstances constituting fraud." Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & MacMillan,* 565 F.2d 602, 611 (9th Cir. 1977). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the

misrepresentation." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985).

Here, Plaintiffs have adequately identified the identities of the parties to the alleged misrepresentations; namely, Freelife and Plaintiffs. Plaintiffs have stated the time of the alleged misrepresentations by alleging when each of the Plaintiffs were solicited to purchase and/or distribute Freelife's products. See Doc. # 10 at ¶¶ 68, 72, 75, 83, 95, 99. Although Plaintiffs have not alleged the exact place or location where the misrepresentations took place, the Court does not believe that place is in anyway integral to Plaintiffs' claims. The most significant allegations with respect to Rule 9(b) are the specific content of the alleged misrepresentations so that Freelife may adequately defend Plaintiffs' allegations. Plaintiffs have satisfied this requirement.

Plaintiffs allege that Freelife made several specific representations concerning the goji berry and Freelife's products. See ¶¶ 31, 42, 54, 60. After identifying the representations made by Freelife concerning the products at issue, Plaintiffs then allege how and why these representations are false or misleading. See ¶¶ 32, 42, 46, 55, 61. Plaintiffs are not required to put on summary judgment type evidence to support their allegations. All that is required at this stage is that Plaintiffs "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Plaintiffs have satisfied Rule 9(b).

*Rule 12(b)(6)*

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**Unjust Enrichment Claim**

"To recover on a theory of unjust enrichment, [plaintiff] must allege and prove that [defendant] acquired the money under circumstances which renders [defendant's] retention

of the money inequitable." *Johnson v. Am. Nat. Ins. Co.*, 613 P.2d 1275, 1279 (Ariz. Ct. App. 1980). "To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). Plaintiffs' complaint adequately alleges unjust enrichment for the purposes of a Rule 12(b)(6) motion.

Plaintiffs have essentially satisfied the first four elements in an unjust enrichment claim by alleging that they purchased and consumed Freelife's products based upon representations that were false. That is, Freelife received enrichment and Plaintiffs impoverishment by paying value for a product the effects of which were fraudulently misrepresented and, based upon these misrepresentations, there is no justification for Freelife's enrichment and Plaintiffs' impoverishment. Nevertheless, Freelife argues that Plaintiffs have failed to allege the final element–absence of a legal remedy.

In Arizona, this element has been applied to preclude recovery under an unjust enrichment claim where there is an express contract that governs the relationship between the parties. *See, e.g., Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application"); *Trustmark*, 48 P.3d at 492 ("Because these contractual documents governed the relationship of the parties, the trial court properly granted [defendant's] motion for JMOL on [plaintiff's] unjust enrichment claim."); *Johnson*, 613 P.2d at 1279 ("The complaint and exhibits reflect that appellants are seeking to recover on a theory of unjust enrichment to relieve themselves of the effects of express provisions of the terms of the loan commitment. . . . Under these circumstances, the doctrine of unjust enrichment is not applicable."); *Ashton Co., Inc., Contractors & Eng'rs v. State*, 454 P.2d 1004, 1010 (Ariz. Ct. App. 1969) ("[Plaintiff] finally contends that it was entitled to recover under the doctrine of unjust enrichment. We summarily reject this contention for the reason that the doctrine has no application to a situation where there is an explicit contract which

has been performed."). Freelife does not argue that there is an express contract between the parties that precludes recovery under an unjust enrichment theory. Indeed, Plaintiffs allege that Freelife sold the products to distributors at wholesale prices and the distributors then sold the products at retail prices to various consumers. Freelife nevertheless contends that Plaintiffs "may not recover under an express warranty and simultaneously seek to recover for the same obligation under an unjust enrichment theory." (Doc. # 12 at p. 11) Freelife does not cite this Court to any Arizona cases so holding, and the only two cases Freelife cites, *White v. Microsoft Corp.*, 454 F.Supp.2d 1118 (S.D. Ala. 2006) and *In re General Motors Corp.*, 385 F.Supp.2d 1172 (W.D. Okla. 2005), are premised upon an express contract. Plaintiffs have not alleged that an express contract exists. At this stage of the proceedings, the Court cannot foreclose Plaintiffs' claim for unjust enrichment based upon the presence of an express contract.

## Breach of Warranty Claims

Freelife next argues that Plaintiffs' breach of warranty claims should be dismissed for Plaintiffs' failure to provide notice to Freelife within a reasonable time as required by Arizona law. The Arizona legislature has provided that "[w]here a tender has been accepted . . . [t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." ARIZ. REV. STAT. § 47-2607 (2005). Ordinarily, whether notice was given within a reasonable time is a question of fact for the jury, "unless it appears that only one finding can legally be derived from the circumstances." *Pace v. Sagebrush Sales Co.*, 560 P.2d 789, 792 (Ariz. 1977) (citing *Davidson v. Wee,* 379 P.2d 744, 749 (Ariz. 1963).

In this case, Plaintiffs did not provide direct notice to Freelife prior to the filing of this lawsuit, nor do Plaintiffs so allege. However, the requirement of providing notice may be fulfilled by the filing of a complaint. *Pace*, 560 P.2d at 792("[W]e agree with the defendant that the requirement of notice may indeed be fulfilled by the pleadings themselves."). Thus, the question is whether Plaintiffs' unreasonably delayed in giving notice to Freelife as a matter of law.

Plaintiffs filed this action in May 2009. Freelife argues that: Plaintiff Burge's breach of warranty claim became, or should have become, apparent in at least September 2007 when he created a website that allegedly exposes Freelife's misrepresentations concerning their products; Plaintiff Dick's warranty claim became, or should have become, apparent in at least September 2007 when he stopped selling and consuming Freelife's products; Plaintiff Forgette's warranty claim became, or should have become, apparent in at least January 2007 when she viewed the Canadian Broadcasting Company program concerning Freelife's products and thereafter stopped promoting and selling the products; Plaintiff Krause's warranty claim became, or should have become, apparent in at least August 2006 when she stopped using one of Freelife's products; Plaintiff Reyes' warranty claim became, or should have become, apparent in 2007 when he stopped selling and using Freelife's products; Plaintiff Strobel's warranty claim became, or should have become, apparent in at least September 2007 when he stopped consuming Freelife's products after reading information contained on Plaintiff Burge's website concerning Freelife's alleged misrepresentations.

In response, Plaintiffs do not dispute Freelife's proffered time-frames for when each individual Plaintiff's warranty claim became apparent. Rather, Plaintiffs contend that Freelife was put on notice by a Canadian Broadcasting Company program that aired in January 2007, as well as through Plaintiff Burge's website that went live in September 2007. However, such notice through a television program or an Internet website is foreclosed through the plain language of Section 47-2607, which provides that the *buyer* must notify the seller. ARIZ. REV. STAT. § 47-2607 ("Where a tender has been accepted . . . [t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). The Arizona legislature did not provide for indirect notice through such means as a television or the Internet, nor has Plaintiff cited the Court to any Arizona case that so holds. Rather, the Arizona legislature placed the burden of giving notice squarely on the shoulders of the buyer. As such, Plaintiffs' argument that they effectuated notice through the Canadian Broadcasting Company program and Plaintiff Burge's website must fail.

Thus, the only notice proffered by Plaintiffs under Section 47-2607 was the filing of their complaint in May 2009. For Plaintiff Burge, the time from when his breach of warranty claim became apparent until the time of the filing of this suit is 20 months; for Plaintiff Dick, the time amounts to 20 months; for Plaintiff Forgette, the time amounts to 28 months; for Plaintiff Krause, the time amounts to 33 months; for Plaintiff Reyes, the time amounts to 17 months; and for Plaintiff Strobel, the time amounts to 20 months. The Court finds that such delays are unreasonable as a matter of law.

Plaintiffs do not submit any reasons as to why they waited several months before providing notice to Freelife. Based upon Plaintiffs' own allegations, at the time that each individual Plaintiff stopped consuming Freelife's products, he or she was aware that the products were not performing as represented by Freelife. At that point, Plaintiffs should have given the required notice to Freelife under Section 47-2607. Plaintiffs' failure to do so requires this Court to find that Plaintiffs are "barred from any remedy," ARIZ. REV. STAT. § 47-2607, under a breach of warranty theory. *See Pace*, 560 P.2d at 789 (holding as a matter of law that notice exceeding four months was unreasonably late, barring retailers' warranty claims); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1115-16 (D. Ariz. 2003) (finding that two years constitutes unreasonably delayed notice as matter of law and, thus, dismissing plaintiffs' implied warranty claims).

### Arizona Consumer Fraud Act

Freelife next argues that Plaintiffs' claims under the Arizona Consumer Fraud Act ("ACFA"), ARIZ. REV. STAT. § 44-1521 *et seq.*, are time-barred. The ACFA creates a private cause of action for statutory damages against those who practice fraud in connection with the sale of merchandise. *Haisch v. Allstate Ins. Co.,* 5 P.3d 940, 944 (Ariz. Ct. App. 2000). Under ARIZ. REV. STAT. § 12-541 (2003), an action based on liability created by an Arizona statute "must be initiated within one year after the cause of action accrues." *Alaface v. Nat'l Inv. Co.,* 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994). Hence, an action under the ACFA must be filed with in one year of the cause of action accruing. A cause of action under the ACFA accrues when the consumer discovered or with reasonable diligence could have discovered

both the "what" and "who" elements of the fraud. *Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988).

As discussed above, all of the other plaintiffs involved either knew or should have known both the "what" and "who" elements of fraud. That is, Plaintiffs knew the "who"–Freelife–and they knew the "what"–that the Freelife products were not performing as Freelife represented–at the time they stopped selling and or consuming the products. In response, Plaintiffs assert only that the claims of Plaintiff Krause–who purchased TAIslim up until April 2009–and Plaintiff Forgette–who purchased GoChi up until February 2009–are not time-barred under Section 12-541. The Court agrees.

Therefore, with the exception of Plaintiff Krause's claim based upon the TAIslim product and Plaintiff Forgette's claim based upon the GoChi product, Plaintiffs' claims under the ACFA are time-barred.

## Injunctive Relief

Freelife asserts that Plaintiffs' claim for injunctive relief should be dismissed because "an injunction is a remedy and not a separate and independent cause of action." (Doc. # 12 at p. 15.) That is, Freelife argues that because there is no underlying claim to support injunctive relief, Count V must be dismissed. The Court declines to grant Freelife's motion with respect to Count V. Count V incorporates preceding claims by reference and alleges that unless Freelife is enjoined, they "will continue to engage in consumer fraud by the making of materially false and deceptive representations and affirmations of fact concerning" Freelife's products. (Doc. # 10 at p. 35, ¶ 150.) Moreover, Plaintiffs also allege that unless Freelife is enjoined, they will continue to suffer irreparable harm for which there is no adequate remedy at law. At this stage of the proceedings, the Court cannot say that Plaintiffs will not suffer irreparable harm or that there is no adequate remedy at law. Given that certain of Plaintiffs claims survive Freelife's motion to dismiss, it is possible that Plaintiffs will be able to show injury sufficient to warrant the requested relief. Plaintiffs' organizational choice to locate the request for injunctive relief in a separate count of their complaint does not vitiate the merits of their request.

Freelife also maintains that the type of injunction Plaintiffs seek is an impermissible prior restrain on Freelife's speech. Freelife fails to identify what protected constitutional freedoms would be prohibited by the Plaintiffs' requested relief. The First Amendment does not shield a person committing a fraud on the public even where the purpose is protected by the First Amendment. *Am. Assoc. of State Troopers v. Preate,* 825 F.Supp. 1228, 1232 (M.D. Penn.) ("[F]alse speech is not protected by the First Amendment."), *reconsideration denied,* 532 F.Supp. 894 (1993); *Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940) (narrowly-tailored restrictions against fraudulent and misleading speech fulfill the government's compelling interest in protecting the public from fraudulent practices). "While commercial speech is protected by the First Amendment, '[t]he government may ban forms of communication more likely to deceive the public than to inform it . . . .'" *Preate,* 825 F.Supp at 1232 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980)).

As applied to Freelife, and assuming the facts alleged by Plaintiffs are true as the Court must do in a motion to dismiss, the injunctive relief here is not an impermissible prior restraint. *Auburn Police Union v. Carpenter,* 8 F.3d 886, 903 (1st Cir. 1993) ("An injunction that is narrowly tailored, based upon a continuing course of repetitive speech, and granted only after a final adjudication on the merits that the speech is unprotected does not constitute an unlawful prior restraint."). As such, the Court denies Freelife's motion with respect to Count V.

## CONCLUSION

For the reasons discussed above, this Court has subject matter jurisdiction to consider Plaintiffs' claims and Plaintiffs' complaint satisfies the requirements of Rule 9(b). Freelife's motion with respect to Count I– unjust enrichment–is denied. Freelife's motion with respect to Counts II and III–breach of express warranty and breach of implied warranty, respectively–is granted. Freelife's motion with respect to Count IV–violation of the Arizona Consumer Fraud Act–is granted except as it applies to Plaintiff Krause's claim based upon

the TAIslim product and Plaintiff Forgette's claim based upon the GoChi product. Finally, Freelife's motion with respect to Count V–injunctive relief–is denied.

Accordingly,

**IT IS ORDERED** that Defendant Freelife International, Inc.'s Motion to Dismiss the Amended Complaint (Doc. # 12) is granted in part and denied in part consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Request for Rule 16 Preliminary Pretrial Conference is granted. An Order setting a Rule 16 conference will follow.

DATED this 17th day of November, 2009.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge